## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| VALLEY BAIL BONDS, a Montana Partnership, SCOTT RESTVEDT and DAVID CROW, | CV-14-24-BLG-SPW-CSO |
| Plaintiffs, | **FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| vs. | |
| LINDA BUDESKI, individually, and as Justice of the Peace of PARK COUNTY, MONTANA, and PARK COUNTY, MONTANA, a Political Subdivision of the State of Montana, | |
| Defendants. | |

Plaintiffs Valley Bail Bonds, Scott Restvedt, and David Crow claim that Linda Budeski ("Budeski"), as a Park County, Montana, justice of the peace, and Park County ("Park County") violated their constitutional rights under 42 U.S.C. § 1983 and wrongfully interfered with their business operations under Montana law. *Cmplt. (ECF 1) at 4-7.*[1] Plaintiffs allege that some of Budeski's bail decisions in criminal

---

[1] "ECF" refers to the document as numbered in the Court's Electronic Case Files. *See The Bluebook, A Uniform System of Citation, § 10.8.3.* Citations to pages are to those assigned by the ECF system.

cases, and Park County's failure to train and supervise her, caused Plaintiffs damages for which Budeski and Park County are liable. Budeski is sued both in her official and her individual capacities.

Valley Bail Bonds is a Montana partnership. *Id. at 1.* Its business involves providing bail bonds to criminal defendants subject to detention in Park County. *Id. at 3.* Plaintiffs' principal claim is that Budeski, acting outside her jurisdictional authority, allowed criminal defendants to post ten percent (10%) of their bond amount with the court rather than requiring that such individuals either pay the full amount of their bond or use the services of a bail bondsman to pay the bond amount. *Id.* This practice, Plaintiffs claim, deprives them of their property interest in writing bail bonds in Park County. *Id. at 4.*

Defendants' move to dismiss Plaintiffs' claims under Rule 12(b)(6).[2] Having considered the parties' briefs and the applicable law, the Court enters the following Findings and Recommendation.

## I.  BACKGROUND

In addressing a Rule 12(b)(6) motion, the Court accepts all factual allegations in the complaint as true and construes the pleadings in the

---

[2]References to rules are to the Federal Rules of Civil Procedure unless otherwise noted.

light most favorable to the nonmoving party. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). Plaintiffs' Complaint alleges as follows.

Sometime before July 22, 2013, Budeski began allowing criminal defendants to post ten percent (10%) of their bond amount with the Court rather than requiring them to either pay the full bond amount or use the services of a licensed bail bondsman. *ECF 1 at 3*. On or about July 22, 2013, someone contacted Plaintiffs willing to post $7,500 cash in conjunction with a $75,000 bond for Park County criminal defendant Michael Shane Ransom ("Ransom"), who had been charged with a crime in the Justice Court of Park County. Plaintiffs performed an investigation into the nature of the crime and the risks involved, and agreed to provide Ransom a surety bond.

Before Plaintiffs completed the transaction, however, Budeski, at the urging of Ransom's lawyer, allowed Ransom to post ten percent of his $75,000 bond with the court, "as opposed to using a bond company" licensed through the State Auditor's office. *Id*. (quotations in original). Although the Complaint puts this phrase in quotations, there is no citation to the source of the quotation.

From these allegations, Plaintiffs assert the following five counts:

(1) **Count One** – that under 42 U.S.C. § 1983, Budeski, acting in her individual capacity, deprived them of their property interest in writing bail bonds without providing due process and in violation of MCA § 46-9-401;

(2) **Count Two** – that under 42 U.S.C. § 1983, Park County violated their property and liberty interests by failing to train and supervise Budeski in connection with her bail bonds practices just described;

(3) **Count Three** – that under 42 U.S.C. § 1983, Plaintiffs are entitled to a permanent injunction prohibiting Budeski and other Park County judges from allowing forms of bail not specifically authorized by MCA § 46-9-401;

(4) **Count Four** – that Budeski and Park County have wrongfully interfered with Plaintiffs' business operations by acting as a surety and by competing with Plaintiffs' business; and

(5) **Count Five** – that Plaintiffs are entitled to a declaratory judgment that Budeski's and Park County's "practice of accepting 10% of bail amounts is contrary [to] the forms of bail allowed by [MCA] § 46-9-401 (2013)[ ]".

Plaintiffs seek "general, special and punitive damages[,]" injunctive and declaratory relief, and attorneys fees. *ECF 1 at 6-8.*

## II.   <u>SUMMARY OF PARTIES' ARGUMENTS</u>

In seeking dismissal of Plaintiffs' claims, Budeski and Park County argue that: (1) to the extent Budeski's conduct gave rise to Plaintiffs' state law claims, she enjoys individual immunity under

Montana law, provided Park County acknowledges that her conduct was within the course and scope of her employment, which it was, *ECF 4 at 3-4*; (2) Budeski is entitled to judicial immunity because she was performing a function normally performed by a judge when she set bail, regardless of whether she erred in doing so, and because she did not act in the clear absence of all jurisdiction, *id. at 4-8*; (3) Park County may not be held liable for failing to train Budeski because it owes no duty to specific members of the public but rather owes a duty to the public as a whole, and because it does not have a special relationship with Plaintiffs that would give rise to a duty, *id. at 9-10*; (4) Park County is not subject to liability under 42 U.S.C. § 1983 because Plaintiffs have failed to allege facts identifying conduct that amounts to a practice, policy, or custom responsible for the alleged constitutional violations, *id. at 10-11*; (5) Plaintiffs have failed to allege a property or liberty interest that warrants § 1983 protection because they have failed to allege facts implicating a protected property interest but rather allege facts supporting only speculative future business income, and Budeski's conduct does not interfere with Plaintiffs' overall ability to engage in business, *id. at 11-13*; (6) Plaintiffs are not entitled to injunctive relief

because no declaratory decree has been violated, *id. at 14*; (7) Plaintiffs are not entitled to declaratory relief because there exists no actual controversy in that Plaintiffs have not alleged that they had a written contract with criminal defendant Ransom or that Budeski encroached upon their contractual rights, *id. at 14-15*; and (8) to the extent Plaintiffs seek declaratory relief under Montana law, this federal court should decline to address the declaratory issue because it is a matter more appropriately addressed by the state courts, *id. at 15-17*.

In response, Plaintiffs argue that: (1) Budeski is not entitled to judicial immunity because her act of allowing a criminal defendant to pay the court ten percent of the set bail was an administrative decision, not a judicial decision, *Pltfs' Resp. Br. (ECF 6) at 5-10*; (2) they have adequately alleged a property interest protected by § 1983 because of their "constitutionally recognized property interest in their ability to carry out the business of underwriting bail bonds in Montana Courts of limited jurisdiction[,]" *id. at 10-12*; (3) the public duty doctrine does not apply in this case because a special relationship exists between Plaintiffs and the courts in that "Plaintiffs depend on the Courts to set bail in criminal matters, and Courts, likewise, depend on licensed bail

bondsmen to either motivate criminal defendants, with the threat of economic loss, to show up for Court appearances, to arrest criminal defendants who do not appear, and, to pay the full amount of the posted bail of fleeing defendants in other cases[,]" *id. at 12-14*; and (4) both injunctive and declaratory relief are available to Plaintiffs because Plaintiffs' federal and state law claims "are inextricably intertwined[ ]" and the court has pendent jurisdiction to resolve this case in its entirety, *id. at 14-15*.

## III.   **LEGAL STANDARD**

"Dismissal under Rule 12(b)(6) is proper only when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)).  In addressing a Rule 12(b)(6) challenge, the Court accepts all factual allegations in a complaint as true (*Hospital Bldg. Co. v. Trustees of the Rex Hospital*, 425 U.S. 738, 740 (1976)), and construes the pleading in the light most favorable to the nonmoving party.  *Tanner v. Heise*, 879 F.2d 572, 576 (9th Cir. 1989).  The Court is not, however, required to accept as true

allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

## IV. DISCUSSION

### A. Count One – Damages Sought for Alleged Violation of Rights Protected by 42 U.S.C. § 1983

This claim seeks relief only against Budeski. As a threshold issue, the Court considers whether Budeski enjoys absolute judicial immunity for the conduct that Plaintiffs allege give rise to their claims.

It is well-settled that judges are "absolutely immune for judicial acts." *Simmons v. Sacramento Co. Superior Ct.*, 318 F.3d 1156, 1161 (9th Cir. 2003); *see also Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). Judicial immunity provides immunity from suit, not just from an assessment of damages. *Mireles*, 502 U.S. at 11. The judicial immunity doctrine "reflects the long-standing 'general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'" *Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916, 922 (9th Cir. 2004) (quoting *Bradley v. Fisher*, 80 U.S. (13

Wall.) 335, 347 (1871)).

Judges enjoy immunity "for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978) (quoting *Bradley*, 80 U.S. at 351); *see also Mireles*, 502 U.S. at 11 ("judicial immunity is not overcome by allegations of bad faith or malice"). "[T]he necessary inquiry in determining whether a defendant judge is immune from suit is whether at the time he took the challenged action he had jurisdiction over the subject matter before him." *Stump*, 435 U.S. at 356. Courts are to construe judicial immunity broadly. A "judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Stump*, 435 U.S. at 356-57 (quoting *Bradley*, 80 U.S. at 351). Even "grave procedural errors" do not deprive a judge of immunity. *Ashelman v. Page*, 793 F.2d 1072, 1077 (9th Cir. 1986) (citing *Stump*, 435 U.S. at 359)).

Thus, exceptions to judicial immunity are recognized only in two limited situations: (1) where the judge's actions were not taken in the

judge's judicial capacity (*Mireles*, 502 U.S. at 11 ("nonjudicial actions")), and (2) where the judge has acted "in the 'clear absence of all jurisdiction[.]'" *Sadoski v. Mosley*, 435 F.3d 1076, 1079 (9th Cir. 2006) (quoting *Stump*, 435 U.S. at 356-57 and *Bradley*, 80 U.S. at 351). "A clear absence of all jurisdiction means a clear lack of all subject matter jurisdiction[,]" as opposed to acts committed merely in excess of jurisdiction. *Miller v. Davis*, 521 F.3d 1142, 1147 (9th Cir. 2008) (citations omitted). Where "jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case[.]" *Stump*, 435 U.S. at 356 n.6 (quoting *Bradley*, 80 U.S. at 351–52).

Applying the foregoing authority to the case at hand, the Court concludes that Budeski enjoys absolute judicial immunity for the conduct Plaintiffs allege give rise to their claims. It is well established that justices of the peace "fall within the protective ambit of the [judicial immunity] doctrine." *Gregory v. Thompson*, 500 F.2d 59, 62 (9th Cir. 1974) (citing *Mississippi ex rel. Giles v. Thomas*, 464 F.2d 156,

159-160 (5th Cir. 1972); *Hurlburt .v Graham*, 323 F.2d 723, 725 (6th Cir. 1963); and *Tate v. Arnold*, 223 F.2d 782, 786 (8th Cir. 1955)).[3] Thus, the first question is whether Budeski, at the time she allowed criminal defendants to post ten percent of their bond amount with the court rather than requiring them to pay the full bond amount or use the services of a bail bondsman, had jurisdiction over the subject matter before her. *Stump*, 435 U.S. at 356. The Court concludes that she did.

Under Montana law, "justices' courts have jurisdiction of public offenses committed within the respective counties in which the courts are established" for categories of misdemeanors described in the governing statute. *See* MCA § 3-10-303(1)(a)-(g). Justices' courts also have "jurisdiction to act as an examining and committing court in cases

---

[3]The Second Circuit noted in *Tucker v. Outwater*, that "there is Supreme Court dictum to the effect that judges who sit on courts of limited (as opposed to general) jurisdiction are immune from damages only if they act within their jurisdiction, and are subject to damage actions if they act in excess, although not in the clear absence, of all jurisdiction." 118 F.3d 930, 937-38 (2d Cir. 1997) (citing *Alzua v. Johnson*, 231 U.S. 106, 34 S.Ct. 27, 58 L.Ed. 142 (1913); *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1872); *Randall v. Brigham*, 74 U.S. (7 Wall.) 523, 535–36, 19 L.Ed. 285 (1869)). Although, in light of *Gregory*, *supra*, it appears that the Ninth Circuit does not consider the dicta binding, it is not relevant in the case at hand in any event because the Court concludes, as discussed below, that Budeski acted within her jurisdiction and not in excess of it.

involving felony offenses[.]" *State v. Strobel*, 885 P.2d 503, 504 (Mont. 1994) (citing Art. VII, Sec. 5(2), MONT. CONST.; MCA § 3-10-303).  As part of such proceedings, "[a] judge may admit to bail any defendant properly appearing before the judge in a bail proceeding."  MCA § 46-9-201.[4]

MCA § 46-9-201 further provides as follows:

> When bound over to any court or judge having jurisdiction of the offense charged, bail must be continued provided that the court or judge having jurisdiction may increase, reduce, or substitute bail.

From the foregoing, Montana law clearly provides that Budeski, as a justice of the peace, has jurisdiction to "admit to bail" any defendant properly appearing before her.  In addition, the foregoing authority demonstrates that she has jurisdiction to "increase, reduce, or substitute bail."  MCA § 46-9-201.  Thus, based on the allegations in Plaintiffs' Complaint, viewed as true and construed in the light most favorable to Plaintiffs, the Court concludes that Budeski had jurisdiction over the subject matter before her.

---

[4]"Judge," as used in the statute, includes justices of the peace because "judge" is defined in this section of Montana law as "a person who is vested by law with the power to perform judicial functions." MCA § 46-1-202(10).

The Court next must consider whether Budeski's actions fall within either of the two limited exceptions to judicial immunity. First, the Court must decide whether Budeski acted outside of her judicial capacity.

As noted above, MCA § 46-9-201 permits a justice of the peace to "admit to bail any defendant properly appearing before the judge in a bail proceeding." Plaintiffs have not alleged that Budeski acted outside of her judicial capacity in setting bail for criminal defendants appearing before her. But they do argue that she acted outside of her judicial capacity in allowing such defendants to post ten percent of the bond amount with the court. The Court is not persuaded.

As noted, MCA § 46-9-201 clearly provides that judges have jurisdiction to "increase, reduce, or substitute bail." Allowing criminal defendants to post ten percent of a bond amount is tantamount to reducing or substituting bail, judicial functions squarely within a judge's authority under the statute. And it is generally well established that "granting bail and fixing its amount are judicial or quasi-judicial functions." *In re Application of Floyd*, 413 F. Supp. 574, 575 (D. Nev. 1976) (citing *Berkowitz v. U.S.*, 90 F.2d 881, 883 (8th Cir.

1937)); *see also Sanchez v. Doyle*, 254 F. Supp. 2d 266, 271 (D. Conn. 2003) ("Setting bail is a judicial act."); *Clynch v. Chapman*, 285 F. Supp. 2d 213, 221 (D. Conn. 2003) (same); *Jefferson v. City of Hazlehurst*, 936 F. Supp. 382, 389-90 (S.D. Miss. 1995) ("power to admit to bail, and its accompanying obligation to scrutinize sureties, is clearly a judicial act."). Because Budeski's actions were well within her jurisdiction as a justice of the peace and were clearly judicial in nature, the Court concludes that the first exception to the judicial immunity doctrine does not apply.

Second, the Court must decide whether the other narrow exception to judicial immunity applies – that is, whether Budeski acted "in the clear absence of all jurisdiction." *Sadoski*, 435 F.3d at 1079 (citations and internal quotations omitted). Based on the foregoing analysis, the Court concludes that the second exception also does not apply.

As noted, Budeski had jurisdiction over the subject matter before her. And her acts of granting bail, setting its amount, and reducing or substituting it were judicial functions performed within her judicial capacity. No other conduct is at issue or challenged. Thus, it cannot

reasonably be argued that she acted in the clear absence of all jurisdiction.

For the foregoing reasons, the Court concludes that Budeski is cloaked in absolute judicial immunity respecting Plaintiffs' § 1983 claim against her contained in Count One of the Complaint. Thus, Plaintiffs' claim against Budeski in Count One should be dismissed.

**B.    Count Two – 42 U.S.C. § 1983**

Count Two seeks relief only against Park County. As earlier noted, Plaintiffs claim in Count Two that Park County failed, with deliberate indifference to Plaintiffs, to train and supervise Budeski resulting in violation of Plaintiffs' constitutionally-protected property and liberty interests. *ECF 1 at 5-6.* For the reasons discussed below, the Court will recommend that this claim be dismissed.

First, Plaintiffs have failed sufficiently to allege facts that give rise to a constitutional violation. Section 1983 provides:

> Every person who, under color of any [state law] ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]

42 U.S.C. § 1983.

"Section 1983 does not create any substantive rights, but is instead a vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (citing *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 978 (9th Cir. 2004) (internal quotation marks omitted)). The statute's purpose "is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *Id.* (quoting *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000)).

Here, Plaintiffs allege that Park County deprived them of their property or liberty interests in conducting their bail bond business. The facts they allege give rise to this claim are that Park County failed to train and supervise Budeski respecting her bail bond practices. *ECF 1 at 5*. An essential component of this claim, of course, is that Plaintiffs must have a property or liberty interest in conducting their bail bond business.

It is well-recognized that "the pursuit of an occupation or profession is a protected liberty interest that extends across a broad range of lawful occupations." *Wedges/Ledges of California, Inc. v. City*

*of Phoenix*, 24 F.3d 56, 65 n.4 (9th Cir. 1994).   Although the precise

contours of this liberty interest are unclear, the Supreme Court has

observed that, to establish a liberty interest deprivation, there must be

facts alleged that approach a "complete prohibition of the right to

engage in a calling." *Conn v. Gabbert*, 526 U.S. 286, 292, 119 S.Ct.

1292, 143 L.Ed.2d 399 (1999); *see also Lowry v. Barnhart*, 329 F.3d

1019, 1023 (9th Cir. 2003); *Dittman v. California*, 191 F.3d 1020, 1029

(9th Cir. 1999).

Here, Plaintiffs have not claimed that Park County's alleged

failure to train and supervise Budeski resulted in their inability to

engage in their business.  Thus, their allegations of curtailment of their

business fall short of the extent of liberty-interest deprivation

necessary under the foregoing authority.

Second, the plain language of the state statute upon which

Plaintiffs rely in asserting a property interest – MCA § 46-9-401 – does

not support their claim of a protected property interest.  The statute

"sets forth numerous ways that bail may be furnished[.]" *Siroky v.

Richland County*, 894 P.2d 309, 310 (Mont. 1995).  It provides, in

relevant part, as follows:

(1) Bail **may** be furnished in the following ways:

> (a) by a deposit with the court of an amount
> equal to the required bail of cash, stocks, bonds,
> certificates of deposit, or other personal property
> approved by the court;
> (b) by pledging real estate situated within the
> state with an unencumbered equity, not exempt,
> owned by the defendant or sureties at a value
> double the amount of the required bail;
> (c) by posting a written undertaking executed by
> the defendant and by two sufficient sureties;
> (d) by posting a commercial surety bond executed
> by the defendant and by a qualified agent for and
> on behalf of the surety company; or
> (e) by posting an offender's driver's license in lieu
> of bail if the summons describes a violation of
> any offense as provided in 61-5-214 and if the
> offender is the holder of an unexpired driver's
> license.

MCA § 46-9-401 (emphasis added).

As evidenced by the use of the permissive "may," the statute authorizes various forms in which bail may be furnished. It does not require either that bail be tendered in a specific form or that a criminal defendant post a commercial surety bond. Thus, Plaintiffs have not asserted a property right sufficient to invoke constitutional protection through § 1983. Because Plaintiffs have failed sufficiently to allege facts that give rise to assertion of a constitutional violation, Count Two should be dismissed.

The Court notes that, even if Plaintiffs had asserted a property or liberty right in conducting their bail bond business, their claim is deficient for an alternative reason. It is axiomatic that complaints must contain sufficient allegations of underlying facts to give fair notice and to enable an opposing party to defend itself effectively. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Of course, a county or municipal governmental entity, such as Park County, qualifies as a "person" within the meaning of 42 U.S.C. § 1983, and can be sued for damages under that statute. *Monell v. Dept. of Social Services*, 436 U.S. 658, 690 (1978). A plaintiff must demonstrate that the county itself acted deliberately or culpably, and that there is a direct causal link between the county's action and the deprivation of a federal right. *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 404 (1997). Thus, a county can be subject to liability under *Monell* and § 1983, but only "if a 'policy or custom' of the [county] deprived the [Plaintiffs] of their constitutional rights." *Humphries v. County of Los Angeles*, 554 F.3d 1170, 1202 (9th Cir. 2009). A county is not automatically liable under § 1983, however, if an employee applies a policy in an unconstitutional manner. *Ewing v. City of Stockton*, 588

F.3d 1218, 1235 (9th Cir. 2009) (citation omitted).

Here, in asserting their failure to train and supervise claim, Plaintiffs only assert that Park County failed to train and supervise Budeski "in connection with her bail bonds practices as well as with providing her basic training in constitutional and statutory law." *ECF 1 at 5*. In their "Facts Common to All Counts" section in their Complaint, Plaintiffs have failed to allege any facts supporting their claim that Park County failed to train and supervise Budeski. Also, they have alleged no facts that could reasonably support an inference that Park County had a policy, custom, or practice that deprived Plaintiffs of their constitutional rights, or that Budeski was inadequately trained because of Park County's deliberate indifference to Plaintiffs' constitutional rights. Their claim in Count Two, therefore, is deficiently pled and may be dismissed on this basis as well.

## C.  **Count Three – Injunctive Relief Sought for Alleged Violations of Rights Protected by 42 U.S.C. § 1983**

Count Three seeks permanent injunctive relief against Budeski and unnamed "other Park County judges" from allowing forms of bail not specifically authorized by M.C.A. § 46-9-401. *ECF 1 at ¶ 23*. The Court is mindful that "[j]udicial immunity is not a bar to prospective

injunctive relief against a judicial officer acting in her judicial capacity." *Pulliam v. Allen*, 466 U.S. 522, 541-42 (1984). But Plaintiffs bring this claim under 42 U.S.C. § 1983. *ECF at 6.* Congress amended § 1983 in 1996 to prohibit the grant of injunctive relief against any judicial officer acting in his or her official capacity "unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. Here, Plaintiffs have neither alleged in their Complaint nor persuasively argued in response to Defendants' motion that Budeski or Park County – or any of the unidentified "other Park County judges" – violated a declaratory decree or that declaratory relief was unavailable to Plaintiffs. *See Savoie v. Martin*, 671 F.3d 488, 496 (6th Cir. 2012). Thus, Plaintiffs' claim for injunctive relief fails and Count Three should be dismissed.

D. **Count Four – Tortious Interference with Prospective Business Relations under Montana Law**

Plaintiffs, presumably, although not expressly, invoking the Court's supplemental jurisdiction under 28 U.S.C. § 1367, also assert a state law claim for damages against Budeski and Park County for tortious interference with prospective business relations. *ECF 1 at 6-7.* To the extent this claim is asserted against Budeski, Montana law

informs whether she is entitled to judicial immunity from this state law claim.  *See Bass v. First Pacific Networks, Inc.*, 219 F.3d 1052, 1055 n.2 (9th Cir. 2000) (citations omitted).

Like federal law, Montana law provides that a judicial officer is immune from suit "arising from the lawful discharge of an official duty associated with the judicial actions of the court."  MCA § 2–9–112(2); *Silverstrone v. Park County*, 170 P.3d 950, 953 (Mont. 2007).  Judges are cloaked with "absolute immunity for judicial acts." *Mead v. McKittrick*, 727 P.2d 517, 518 (Mont. 1986).  A judge is not entitled to judicial immunity if his act "(1) is not normally a function performed by a judge, and (2) the judge acts in the 'clear absence of all jurisdiction.'" *Hartsoe v. Tucker*, 309 P.3d 39, 41 (Mont. 2013) (quoting *Stump v. Sparkman*, 435 U.S. 349, 356-62 (1978)).  But "[i]f a judge has subject-matter jurisdiction over the act in question, he is entitled to immunity." *Id*.  Montana's "immunity statute applies to judicial acts without limitation[,] ... even if the action taken was in error or in excess of [the judge's] authority." *Id*.

As discussed above, Budeski had subject matter jurisdiction over the matter before her.  She acted in her judicial capacity in granting

bail, setting its amounts, and reducing or substituting it. A judge normally performs these functions. And Budeski clearly did not act in the clear absence of all jurisdiction. Thus, she is entitled to absolute judicial immunity for Plaintiffs' state law claim against her. Count Four, therefore, should be dismissed to the extent it is asserted against Budeski.

To the extent Count Four is asserted against Park County, it is also subject to dismissal. "The state and other governmental units are immune from suit for acts or omissions of the judiciary." MCA § 2–9–112(1). And the judicial immunity that a justice of the peace enjoys extends to immunize the county governmental entity with which the justice is employed. *See Silverstrone v. Park County*, 170 P.3d 950, 954 (Mont. 2007). Because, as noted above, Budeski is cloaked with absolute judicial immunity respecting Plaintiffs' claim for tortious interference with prospective business relations, so too is Park County under the foregoing authority. Thus, Count Four should be dismissed in its entirety.

## C.     Count Five – Declaratory Relief

In Count Five, Plaintiffs seek a declaratory judgment that

"Defendants' practice of accepting 10% of bail amounts is contrary [to] the forms of bail allowed by M.C.A. § 46-9-401 (2013)."

Defendants request that the Court decline to reach this question of state law. *ECF 4 at 15-17.* Plaintiffs respond that the federal and state law questions are "inextricably intertwined" and that this Court "can and should retain jurisdiction over all claims in the Complaint." *ECF 6 at 14-15.*

Defendants also urge the Court to dismiss Count Five because Plaintiffs have not properly alleged that an actual controversy exists. They argue that Plaintiffs' declaratory relief request depends on "the speculative conclusion that Plaintiffs' contractual rights may be interfered with in the future and would have been *if* they had a contractual right in the underlying criminal matter." *ECF 4 at 15.* Plaintiffs' brief did not respond to this argument.

A declaratory judgment may be sought only to resolve an "actual controversy." 22 U.S.C. § 2201. Courts may not give advisory opinions, but may only resolve definite and concrete disputes. *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 239-41 (1937); *BP Chemicals Ltd. v. Union Carbide Corp.,* 4 F.3d 975, 977-78 (Fed. Cir. 1993); *see also Montana*

*Dept. of Natural Resources and Conservation v. Intake Water Co.,* 558 P.2d 1110, 1122-23 (Mont. 1976).

Here, the fact allegations are vague and indefinite. It is not clearly alleged that either Defendant has interfered with any specific contractual relation of Plaintiffs, or whether they may do so in the future. No facts are alleged with respect to any custom or practice of Park County, and no facts are alleged that would give rise to an actual controversy with respect to Budeski's statutory discretion to "increase, reduce, or substitute bail." M.C.A. § 46-9-201. Accordingly, the Court concludes that it should recommend that the declaratory judgment claim should be dismissed as well, without prejudice to refiling this state claim in state court. *See generally Centennial Life Ins. Co. v. Poston,* 88 F.3d 255 (4th Cir. 1996); *Natural Resources Defense Council, Inc. v. U.S. E.P.A.,* 966 F.2d 1292, 1299 (9th Cir. 1992).

## V.   **CONCLUSION**

Based on the foregoing, IT IS RECOMMENDED that Defendants' motion to dismiss Counts One, Two, Three and Four with prejudice be GRANTED, as set forth herein. IT IS FURTHER RECOMMENDED that Defendants' motion to dismiss Count Five be GRANTED as set

forth above, and that this count be dismissed without prejudice.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendation must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after entry hereof, or objection is waived.

DATED this 25th day of July, 2014.

/s/ *Carolyn S. Ostby*
United States Magistrate Judge